475 P.2d 541

The STATE of Utah, Plaintiff
and Respondent,

v.

LeMar Edward KAY and Seldon Clarence
Darrow, Defendants and Appellants.

No. 12104.

Supreme Court of Utah.

Oct. 8, 1970.

Ellett, J., concurred in result and filed
opinion in which Crockett, C. J., concurred.

Ben D. Browning, McMillan and Browning, Salt Lake City, for defendants and appellants.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, David S. Young, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HENRIOD, Justice:

Appeal from a forgery conviction. Affirmed.

The forgery mentioned appears to have resulted in a loss of funds belonging to the Church of Jesus Christ of Latter-day Saints, widely known as the Mormon Church.

Sixteen jurors were called. The state eliminated four, as did defendant Darrow, by peremptory challenge. The trial court noted that eleven of the sixteen jurors selected were members of the church—or about 69 per cent of the panel, which does not appear to be unusually disproportionate in the area. At any rate this fact was not urged as error. Of the eight jurors finally chosen and sworn, six were members of the church and two were not. The verdict rendered was unanimous. Each Mormon juror individually indicated he would not be biased or prejudiced by virtue of his church membership, nor would he give more or less credit to a witness who was a member of the church.

The only point of importance for canvass on this appeal, succinctly and bluntly was posed in Darrow's brief which stated that "It strains credulity to believe that a member of the Mormon Church could be the kind of a juror contemplated by the Constitution and the Statute providing for challenges for cause or bias," since "The unfairness of a Mormon sitting in judgment of one charged with wrongdoing concerning his Church's and his own property seems patently clear" because "The spirit and letter of the Constitution condemns such a practice."

This quoted language appears to be an indictment of every Mormon that is so unspecific and sweeping as to amount to what we consider to be an ecclesiastical non sequitur. It is an ipse dixit that imputes to every Mormon, or for that matter, every Catholic, every Protestant, and every Jew, ad infinitum, a congenital, ingrained or adopted dishonesty where his church's property and his own property are involved. The leveling of such a charge is as unorthodox and ungracious as the charge itself. We cannot accept defendant's premise on any legal, social, economic or religious grounds.

If defendant's urgence seriously were indulged, this author and perhaps sufficient others on this court necessary to constitute a quorum, would be vulnerable to the same charge leveled against every Mormon juror that took an oath to try the case strictly on the facts, without bias or prejudice of any kind. I claim no greater integrity for myself than I do for each of the jurors in this case, but if the personal integrity of any one of those jurors strains anyone's credulity because of having a built-in prejudice because of his religion, I too must share the shame, since I was reared in the same faith, differing only, perhaps, by being condemned either jestingly or in seriosity by those who might tag me with the moniker of Jack Mormon.

It is quite significant that the defendant did not assign as error on appeal any urgence that the evidence adduced did not support his forgery conviction. He simply says it wasn't fair to be convicted by a jury on which a single Mormon would sit, based on counsel's assumption that every Mormon conclusively is presumed to be dishonest in a case like this. This is his only suggestion that defendant did not have a fair trial. He does not even claim the jury was unlawfully or unfairly selected from an appropriate list of citizens.

It is even more significant that this jury was unanimous. If the Mormon members were biased, the same sort of syllogistic reasoning indulged by defendant would demand either that the two non-Mormon jurors were 1) biased, as were the six Mormons, or were 2) fair, upright, honest and dandy, so that the six Mormons likewise must have been fair, upright, honest and

dandy, or that 3) the six Mormons converted the two non-Mormons to Mormonism while they were in the jury room, thus infecting them with the same presumed cholera of bias and prejudice with its malodorous atmosphere of incredulity. This author has yet to hear of a conversion instanter like that, and there is nothing in this record to indicate that six of the jurors had been called to serve as missionaries for their church in this case, without purse or scrip, or intelligence, or integrity, or etc.

It seems inescapable from the evidence reflected in this record and from the circumstance that defendant did not claim the facts relating to the forgery were insufficient to establish the offense, to conclude other than that the objection to the jury here was but a tenuous point born of futility in finding a more substantial point, —or technicality, if you please, to justify an appeal.

The claim that each juror had a pecuniary interest in the funds hypothecated by the forgery is fallacious, since there is nothing in this record that remotely indicates that each church member had or has an interest in the purloined or any other church funds,—and no one, we think, justifiably could conclude that a member of the church had any interest in such funds in this case that could be the subject of assignment or sale in the market place.

CALLISTER and TUCKETT, JJ., concur.

ELLETT, Justice (concurring in the result).

I concur in the result but think the opinion overly dignifies the defendant's assertion of error. Here in Utah we profess and attempt to practice religious tolerance equal to that in any other place on earth, and it would seem that the claim of error made is but the straw for which the drowning man grasps.

Both the defendant and his counsel are members of the Church of Jesus Christ of Latter-day Saints (commonly referred to as Mormons); and if there is any basis in fact to the claim of religious bias one would think that the defendant would be happy to have his brethren in the jury box.

The defendant's lawyer asserts that he can represent the client fairly because he has taken an oath as a lawyer to do so. It seems that he refuses to ascribe to the jurors the same degree of moral integrity which he arrogates unto himself. Honesty should compel him to believe that each juror would be mindful of his own oath to render a just and true verdict according to the law and the evidence.

CROCKETT, C. J., concurs in the concurring opinion of ELLETT, J.